**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION -- LONDON**

| | |
|---|---|
| **SUDHABEN PANKAJKUMAR PATEL, et al.,** | **CIVIL NO. 6:20-101-KKC** |
| Plaintiffs, | |
| **V.** | **OPINION AND ORDER** |
| **KENNETH CUCCINELLI,** *Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services*, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

Defendant Kenneth Cuccinelli, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services ("USCIS") moves to dismiss (DE 11) the plaintiffs' claims. For the following reasons, the motion will be granted.

### I.    Background

With this action, the plaintiffs allege unreasonable delays by USCIS at two points in the processing of so-called "U-status" immigration petitions. In 2000, Congress created the U-status nonimmigrant visa classification after finding that immigrant women and children are often the targets of crimes and that these victims must be able to report the crimes to law enforcement and "fully participate" in the investigation and prosecution of the perpetrators. Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(1)(A), (B), 114 Stat. 1464. The U-status nonimmigrant classification is intended for certain foreign nationals who are the victims of qualifying crimes that occurred in the United States. 8 U.S.C. § 1101(a)(15)(U).

To petition for U-status, a foreign national must submit a certification from a law enforcement official, prosecutor, or judge stating that the petitioner was the victim of a qualifying crime, that she possesses information about the crime, and that she has or will cooperate in the in the investigation or prosecution of the crime. 8 U.S.C. § 1184(p)(1); 8 C.F.R. § 214.14(c)(2)(i). The petitioner can also petition for U-status for qualifying family members. 8 C.F.R. § 214.14(f)(1).

Plaintiff Sudhaben Pankajkumar Patel is a citizen and national of India who currently resides in Harlan County, Kentucky. She alleges she was the victim of an assault in Kansas, where she and her family previously lived. (DE 1, Complaint, ¶ 51.) She filed a petition for U-status on December 22, 2016. (DE 1, Complaint, ¶ 54.) On the same date, she petitioned for derivative U-status for her husband, daughter, and son, who are co-plaintiffs in this action. (DE 1, Complaint, ¶¶ 50, 57.)

The Patels complain that the delays have been unreasonable at two steps in the processing of their petitions. (DE 1, Complaint, ¶ 48: First & Second Causes of Action.)

First, once a foreign national has a "pending, bona fide application" for U-status, USCIS "may grant" her work authorization. 8 U.S.C.A. § 1184(p)(6).) In her U-status petition, Patel requested work authorization, but she alleges that USCIS has taken no action on her petition, including the requested work authorization, since she filed it.

Second, the Patels complain about USCIS's delay in placing them on the waiting list for U-status. The agency can grant a maximum of only 10,000 U-status petitions each year. 8 U.S.C. § 1184(p)(2)(A). The number of applications exceed 10,000. Thus, the implementing regulations provide that all "eligible petitioners" who are not granted U-status "due solely to the cap . . . must be placed on a waiting list." 8 C.F.R.

§214.14(d)(2). Being on the waiting list is important because USCIS grants "deferred action" or "parole" to petitioners and their qualifying family members while the petitioners are on the waiting list. *Id*. Deferred action and parole protect the petitioner from removal. *Oceguera v. Albence*, No. 1:20-CV-1235, 2020 WL 4369219, at *2 (M.D. Pa. July 30, 2020). *See also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1911 (2020) ("The defining feature of deferred action is the decision to defer removal . . . ."); 8 U.S.C. § 1182(d)(5)(A). In addition, "in its discretion," USCIS "may authorize employment" for the petitioners on the waiting list and the qualifying family members. 8 C.F.R. §214.14(d)(2).

The Patels complain that USCIS's delay in placing them on the waiting list is unreasonable.

USCIS typically processes U-status visa petitions in the order they are received. § 214.14(d)(2). If a petitioner's U-status application is granted, the petitioner receives a U-status visa that lasts four years with possible extensions. 8 U.S.C. § 1184(p)(6).

The Patels assert two claims against USCIS. With Count I, they assert that USCIS has "unreasonably delayed or unlawfully withheld pre-waiting list work authorization" in violation of 8 U.S.C. § 1184(p)(6). Count II asserts that USCIS has unreasonable delayed placing the Patels on the waiting list for a U-status visa as required by 8 C.F.R. § 214.14(d)(2).

USCIS moves to dismiss the complaint. It argues that the complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Court does not have subject-matter jurisdiction over the claims. USCIS also argues that the complaint

must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim.

## II.      Subject Matter Jurisdiction

The Court will first address USCIS's arguments regarding the Court's subject matter jurisdiction. The existence of subject matter jurisdiction is a threshold question that a court must address before considering a case's merits. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). "When a defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hodgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000).

In their complaint, the Patels assert this Court has jurisdiction to consider their claims under the so-called federal question statute, 28 U.S.C. § 1331, which provides that federal district courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." An action "arises under" federal law "within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983)).

The Patels assert that this action arises under a federal law called the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq*. (DE 1, Complaint, ¶ 7.) That act

provides that individuals can assert a claim for judicial review of an "agency action." 5 U.S.C.A. § 702. Here, the plaintiffs do not ask for review of an agency action; rather, they ask this Court to rule on the legality of agency "inaction." When the APA speaks of "agency action," however, it includes the "failure to act." *Pub. Citizen, Inc. v. Fed. Energy Regulatory Comm'n*, 839 F.3d 1165, 1172 (D.C. Cir. 2016) (citing 5 U.S.C. §§ 551(13), 702). The APA provides that the federal court conducting the review of agency inaction can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706 (1).

The APA's judicial-review provisions do not apply, however, where the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This means "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Action is "legally required" if the statute provides a "specific, unequivocal command" to an agency or orders "a precise, definite act . . . about which [an official has] no discretion whatever." *Id.* at 63.

Thus, a claim that an agency unlawfully withheld or unreasonably delayed an action that is committed to the agency's discretion does not "arise under" the APA. "Since the APA does not apply, Plaintiff has no cause of action arising under federal law." *Torres v. Chertoff*, No. 1:07CV01649 WSD, 2007 WL 4261742, at *6 (N.D. Ga. Nov. 30, 2007). This means the Court has no federal-question jurisdiction of the claim under 28 U.S.C. § 1331. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019–20 (9th Cir. 2007) (holding that, if a claim does not assert that an agency failed to take a discrete agency action that it is required, the "claim may be dismissed for lack of

5

jurisdiction."); *Eason Land Co., LLC v. U.S. Dep't of the Interior, Sec'y*, 703 F. App'x 498, 500 (9th Cir. 2017) ("Because the Whites do not challenge a failure to take or unreasonably delay a discrete agency action that is legally compelled, the district court did not have subject matter jurisdiction over their § 706(1) claim.")

USCIS argues that the two decisions the Patels complain about – the decision to grant work authorizations to individuals with pending applications under 8 U.SC. § 1184(p)(6) and the decision to place the Patels on the waiting list for the U-status visa – are both committed to the agency's discretion. Thus, USCIS argues, the Court has no subject-matter jurisdiction over either of the Patels' claims.

### A. The decision whether to grant work authorizations to U-status petitioners under 8 U.S.C. § 1184(p)(6) is discretionary.

As to work authorizations, the statute provides, "The Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C.A. § 1184(p)(6). As one court has explained, "USCIS interprets this Congressional authority to be permissive and not mandatory. And its current policy is not to implement a program for determining the eligibility of pre-waiting list U Visa applicants for work authorizations. All applicants must wait until they are officially placed on the U Visa waiting list to receive work authorization." *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1375 (M.D. Ga. 2019).

USCIS simply does not grant work authorization to petitioners prior to their placement on the U-status waiting list. Nor do they even evaluate whether someone has a pending, bona fide application. *Id*. at 1378.  Instead, USCIS "continues to evaluate whether an applicant would qualify for work authorization only at the time it decides whether to place him on the U Visa waiting list."  *Id*. at 1376.

6

By its plain terms, the statute does not require that USCIS grant work authorizations to applicants with a pending, bona fide application. It merely permits the agency to grant work authorizations to such applicants. Because the granting of work authorizations to individuals with a pending, bona fide application is wholly discretionary, the Court has no jurisdiction over a claim that the secretary has failed to grant them or has failed to do so within a reasonable time. Count I must be dismissed for lack of subject-matter jurisdiction. *See Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D.N.C. 2019), appeal docketed, No. 19-1435 (4th Cir. Apr. 23, 2019) ("The statute clearly gives USCIS the discretion to grant work authorizations to aliens with pending, bona fide U-Visa applications . . . and, as such, the Court lacks jurisdiction over the claim and it must be dismissed."); *Patel*, 400 F. Supp. 3d at 1377 (stating that Congress "has not clearly required Defendants to implement the pre-waiting list work authorization program and adjudicate requests for this discretionary relief. Thus, Plaintiff is not entitled to an order from this Court directing Defendants to adjudicate his eligibility for a pre-waiting list work authorization. The Court has no subject matter jurisdiction to enter such an order.")

**B. USCIS has a nondiscretionary duty to adjudicate whether petitioners are eligible for the U-status visa.**

As to the decision to place an applicant on the waiting list, the regulation provides that, "[a]ll eligible [U-status] petitioners who, due solely to the [10,000 visas per year] cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2). This means, if the agency decides a petitioner is eligible for a U-status visa, but the agency is unable to grant the

visa because the maximum number for the year have already been granted, then the agency has no discretion – it *must* place that petitioner on the waiting list.

If USCIS. had determined that the Patels were eligible for a U-status visa but that the visa cap had been reached for the year, then this Court would certainly have jurisdiction over a claim that the agency had failed to place them on the waiting list. The agency has no discretion in that situation; it must place the eligible petitioners on the waiting list.

But the agency has not yet decided that any of the plaintiffs are eligible for the U-status visa. And, as the Court understands it, it is this agency inaction that forms the basis for the Patels' claim in Count II. The plaintiffs' complaint is that USCIS has unreasonably delayed a decision on whether they are eligible for the U-status visa.

There is no statute that prescribes a precise time within which USCIS must determine whether the plaintiffs are eligible for the U-status visa. Some courts have concluded, in the context of an application to adjust an immigrant's status to lawful permanent resident under 8 U.S.C. § 1255(a), that, in the absence of a statute or regulation that prescribes the time within which an agency must reach a decision, the agency's "pace of adjudication is discretionary and thus not reviewable." *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014).

In *Orlov v. Howard*, 523 F. Supp. 2d 30 (D.D.C. 2007), the court explained, "[i]f Congress intended to constrain the USCIS to adjudicate an application within a specific amount of time, this Court believes it would have provided a time limitation as it did in 8 U.S.C. § 1447(b), which provides that a determination on a naturalization application must be made within 120 days after an examination is conducted." *Id*. at 34. "In the

absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary." *Id*. at 35.

The Fifth Circuit also addressed the issue in the context of an application to adjust status, albeit in a decision that was later vacated as moot. *Bian v. Clinton*, 605 F.3d 249, 253 (5th Cir. 2010), vacated as moot, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). In *Bian*, the court determined federal courts do not have jurisdiction over the pace of adjudicating applications to adjust status. The court found it important that 8 U.S.C. § 1255 "does not specify a deadline or even a time frame for adjudication of applications, instead committing not only the USCIS's decision but also any 'regulations' necessary for making such a decision to agency discretion." *Id*.

Similarly, in *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), the court noted that the statute governing applications for adjustment of status, instead of placing time limits on the processing of adjustment applications, "simply provides that the adjustment application process is subject to the regulations that USCIS may elect to prescribe." *Id*. at 699. The court found that Congress's intent in such a situation was "to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion" including "the pace at which the process proceeds." *Id*.

Likewise, in *Beshir*, the court concluded, "Granting the Attorney General and the Secretary the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication. *Beshir*, 10 F. Supp. 3d at 174.

USCIS points out that Congress gave the secretary of Homeland Security similarly broad discretion to establish regulations governing nonimmigrant admissions, including the adjudication of U-status nonimmigrant visa petitions. *See* 8 U.S.C. § 1184(a)(1). Nevertheless, USCIS points to no case holding that there is no federal subject-matter jurisdiction over the precise claims at issue in this case:  that the USCIS has unreasonably delayed review of U-status visa applications. In its reply brief, USCIS argues that the Eastern District of North Carolina found no subject-matter jurisdiction over such a claim in *Gonzalez v. Cissna*, 364 F.Supp. 3d 579 (E.D.N.C. 2019). This is not an accurate reading of that case.

In *Gonzalez*, the plaintiff made multiple claims including the two that the Patels make in this case: that USCIS had "unreasonably delayed the adjudication of their work authorizations under 8 U.S.C. § 1184(p)(6), in violation of the Administrative Procedure Act (APA)" and that USCIS had "unreasonably delayed placing plaintiffs on the U-Visa waiting list, in violation of the APA." *Id*. at 582-83.

As to the claim that USCIS had unreasonably delayed adjudication of work authorizations under § 1184(p)(6), the court determined "it is a challenge to an agency action which is committed by statute to the agency's discretion. As such, the Court lacks subject-matter jurisdiction to consider it."  *Id.* at 584. This Court agrees with that ruling as explained above. USCIS is not required to issue work authorizations under § 1184(p)(6) at all. Thus, this Court has no jurisdiction over a claim that they have failed to do that task or that they have failed to do it quickly enough.

As to the claim that "USCIS has unreasonably delayed placing plaintiffs on the U-Visa waiting list, in violation of the APA," this appears to be the same claim that the

plaintiffs make here: that the USCIS has unreasonably delayed its adjudication of their eligibility for the U-status visa and, thus, placement on the waiting list. The North Carolina court exercised jurisdiction over that claim and addressed it on the merits. *Id*. at 585 ("With respect to plaintiffs' unreasonable-delay claim to U-Visa adjudication under the APA, however, the Court must consider the six-factor test set forth in *Telecomms. Research and Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ('TRAC ')"). After analyzing those factors, the court concluded, "it is clear that plaintiffs have not stated sufficient facts to state an APA unreasonable-delay claim to USCIS's processing of U-Visa petitions, so the fourth cause of action must be dismissed." *See also Uranga v. U.S. Citizenship & Immigration Servs*., No. CV 20-0521 (ABJ), 2020 WL 5763633, at *10, n.2  (D.D.C. Sept. 28, 2020).

The Patels cite multiple other federal cases in which the court determined that claims for unreasonable delays in waiting-list decisions raise a federal question. The Court finds their reasoning persuasive for several reasons.

First, the Patels' complaint is not that USCIS has not determined that they are eligible for a U-status visa, a decision that is clearly discretionary. Their complaint is that the USCIS has failed to adjudicate their eligibility for the visa at all.

"The decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security, see 8 U.S.C. § 1101(a)(15)(U), and is exercised through USCIS . . ." *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014); 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(c)(1); 6 U.S.C. § 271(b)(1). But, while the USCIS's decision to grant or deny a U-status visa petition is discretionary, "the USCIS has a nondiscretionary statutory duty to *adjudicate* U Visas." *M.J.L. v. McAleenan*, 420 F.

Supp. 3d 588, 595 (W.D. Tex. 2019). "The secretary cannot be charged with immigration administration and simultaneously have no duty to administrate. Such a result is irrational." *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (citations omitted).

Before the Seventh Circuit, USCIS agreed that it had a "a duty to process [petitioner's U-status visa] application" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017). *See also Patel v. Cissna*, 400 F. Supp. 3d at 1383 ("There is no dispute that Defendants are required by law to decide whether to place Plaintiff on the waiting list and have not done so."); *Lopez v. Cissna*, 2018 WL 5013830, at *4 (D.S.C. Oct. 15, 2018). *Cf. Ayyub v. Blakeway*, 2010 WL 3221700, at *4 (W.D. Tex. Aug. 13, 2010) (holding that, while the USCIS has the discretion to grant or deny an application for naturalization, the agency is without discretion to make no determination at all); *Saini v. USCIS*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008) (concluding that "the duty to act on an application, as opposed to what action will be taken, is not discretionary on the part of the USCIS"); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (concluding that the agency "has a non-discretionary duty to adjudicate adjustment of status applications" but an "unfettered (and hence, unreviewable) discretion whether to *grant or deny* an application."); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004) ("[T]he decision of whether to grant or deny an adjustment application is wholly discretionary" but [w]hether to adjudicate an adjustment application is not discretionary.")

As to the lack of a timeframe set forth in the statute, "[t]he absence of a specified deadline within which action must be taken does not change the nature of USCIS' obligation from one that is ministerial to a matter within the agency's discretion." *Saini v. U.S. Citizenship & Immigration Servs.*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008). "[B]y necessary implication the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended." *M.J.L.*, 420 F. Supp. 3d at 597 (quoting *Saini*, 553 F. Supp. 2d at 1176). The APA itself requires that an agency adjudication be concluded "within a reasonable time." 5 U.S.C. § 555(b). Further, the APA authorizes federal courts to "compel agency action unlawfully held or unreasonably delayed." 5 U.S.C. § 706(1)).

Finally, the Supreme Court "has long applied 'a strong presumption favoring judicial review of administrative action.'" *M.J.L.*, 420 F. Supp. 3d at 594 (quoting *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015)). "Unless 'there is persuasive reason to believe' that Congress intended to preclude judicial review, the Court will not preclude review." *Id*. (quoting *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., 139 S. Ct. 2051, 2060 (2019)).

For all these reasons, this Court has subject-matter jurisdiction to review Plaintiffs' APA claim that the USCIS failed to adjudicate their eligibility for U-status visas within a reasonable time.  *See, e.g., M.J.L.*, 420 F. Supp. 3d at 597; *Lopez*, 2018 WL 5013830, at *4.

13

### III.   Motion to Dismiss for Failure to State a Claim

USCIS argues the Patels have failed to state a claim that the agency has unreasonably delayed the adjudication of their U-status visa petitions. As it must on such a motion, the Court will assume that the factual allegations in the complaint are true. *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). In resolving the motion, the Court will consider these allegations and may also consider certain other information, including "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)). Further, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citation omitted).

The Patels argue that the motion to dismiss is premature. They argue, "without a complete record or discovery, the Court will not have the information necessary to engage in judicial review of the Agency's Rule 12(b)(6) motion." (De 12, Mem. at 16.) On a Rule 12(b)(6) motion, however, the issue is whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). The question raised by USCIS's motion is whether the Patels have made sufficient allegations in the complaint to state a claim that USCIS has unreasonably delayed the adjudication of their eligibility for the U-status visa and, thus, automatic placement on the waiting list. The Court can and must answer that question without discovery.

14

The Patels argue that, when a complaint seeks judicial review of an agency decision, the facts alleged in the complaint are "irrelevant" and, thus, motions to dismiss are improper.  (DE 12, Mem. at 16.) The cases the Patels cite in support of this argument involve judicial review of an agency action, in which the appropriate standard for review is whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (quoting 5 U.S.C. § 702(A)).

These cases do not hold that the facts alleged in the plaintiff's complaint are irrelevant. Instead, they hold that, under the arbitrary-and-capricious standard of reviewing an agency action, discovery in the district court is generally inappropriate. This is because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id. See also Rempfer v. Sharfstein*, 583 F.3d 860 (D.C. Cir. 2009) (explaining that, when a party seeks review of an agency action under the APA, a district court's review is limited to the agency record and, thus, plaintiffs are not ordinarily entitled to augment the agency's record with either discovery or testimony presented in the district court); *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001) (explaining that the question of whether an agency acted in an arbitrary and capricious manner is a legal one and "[a]bsent very unusual circumstances the district court does not take testimony.")

The Patels also cite *Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013), in which the court agreed "that judicial review of the agency's decision must proceed on the administrative record." *Id*. at 75. From that premise, the First Circuit determined that, the plausibility standard on a motion to dismiss "has no place in APA review." *Id.* at 76. This

15

is because, "[t]he plausibility standard is a screening mechanism designed to weed out cases that do not warrant either discovery or trial" and "APA review . . . involves neither discovery nor trial." *Id*.

Even assuming this holding is correct, with an unreasonable-delay claim like the one at issue here, there is no administrative record that will form the basis for this Court's review. There is a difference between lawsuits that challenge a final agency action – like that at issue in *Atieh* – and those that seek to compel an agency to act when the agency has taken no action, like the claim at issue here. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).

As discussed, when a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision." *Id*. "An action to compel an agency to [act], however, is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id*. "In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Id*. "The reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions." *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).

Because the Patels' unreasonable-delay claim does not seek review of a final agency decision and will not depend solely on the administrative record, screening the claim for plausibility is appropriate. In the one case cited by the plaintiffs on this issue that involved an unreasonable-delay claim, the court denied USCIS's motion to dismiss,

16

not because the motion was premature or otherwise inappropriate, but because the court

found the plaintiffs' allegations sufficient to state a claim. *Solis v. Cissna*, No. CV 9:18-

00083-MBS, 2018 WL 3819099, at *5 (D.S.C. Aug. 10, 2018).

The question on this motion is whether the allegations asserted by the Patels, if

ultimately proved to be true, would establish an unreasonable-delay claim. The Patels

argue that, to survive a motion to dismiss, they only need allege that an agency action has

been "unreasonably delayed" without any supporting facts. (DE 12, Response at 19.) The

mere allegation that USCIS has unreasonably delayed action on their applications,

however, is a legal conclusion. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft*, 556

U.S. at 678. For purposes of a motion to dismiss, the Court "must take all of the factual

allegations in the complaint as true," but the Court does not "accept as true a legal

conclusion couched as a factual allegation." *Id*. To survive a motion to dismiss, the

factual allegations in the complaint "must be enough to raise a right to relief above the

speculative level."  *Id*. The plaintiff must plead enough facts to "state a claim to relief

that is plausible on its face" and to nudge his claim "across the line from conceivable to

plausible." *Id*. at 680.

As to the kinds of facts that a plaintiff must allege to state an unreasonable-delay

claim, USCIS argues that the Court should consider the six-factor test set forth in

*Telecommunications Research and Action Center ('TRAC") v. Federal Communications

Commission*, 750 F.2d 70 (D.C. Cir. 1984). These factors are: (1) "the time agencies take

to make decisions must be governed by a 'rule of reason'"; (2) "where Congress has

provided a timetable or other indication of the speed with which it expects the agency to

17

proceed in the enabling statute, that statutory scheme may supply the content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *Id*. at 80 (quoting *Public Citizen Health Research Grp. v. Comm'r, Food & Drug Admin*., 740 F.2d 21, 34 (D.C. Cir. 1984)).

These factors are not "ironclad,' but rather are intended to provide "useful guidance in assessing claims of agency delay." *Id*. In determining whether the Patels have sufficiently alleged an unreasonable-delay claim, the Court will consider the *TRAC* factors as a useful guide. Nevertheless, the Patels do not necessarily need to make allegations in the complaint regarding each of these factors to state an unreasonable-delay claim. Moreover, allegations other than those set forth in the *TRAC* framework may help to support the claim. "Each case must be analyzed according to its own unique circumstances . . . Each case will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd*., 750 F.2d 81, 86 (D.C. Cir. 1984). A plaintiff must, however, allege facts from which it can be inferred that the agency's delay has been unreasonable.

In their complaint, the Patels allege that "there is no rule of reason controlling USCIS's U status waiting list decisions." (DE 1, Complaint, ¶ 92.) They allege that the agency does not decide eligibility for the waiting list on a "first in, first out basis." (DE 1,

Complaint, ¶ 93.) Instead, the Patels allege, USCIS "systematically prioritizes later filed petitions over earlier filed petitions for U-status waiting list decisions." (DE 1, Complaint, ¶ 94.)

In response to the agency's motion to dismiss, the Patels explain that USCIS generally adjudicates U-status applications on a "first in, first out basis." (DE 12, Response at 22.) The Patels argue, however, that the agency's exceptions to this policy destroy the rule. They complain that the agency expedites U-status waiting list decisions for various reasons outlined in the agency's policy manual, for U-status applicants that are in removal proceedings, and for U-status applicants that have final orders of removal. The Patels also complain that USCIS adjudicates the applications of the principal applicant's family members ("derivative" applications) when it adjudicates the principal's application, which presumably moves the derivative applications ahead of the applications of other principals. (DE 12, Response at 22.)

The agency's process of adjudication is guided by a general rule that has some exceptions. This constitutes a rule of reason. "USCIS's processing of first-filed petitions before later-filed petitions, with a select few petitions being expedited subject to criteria set forth by the agency, constitutes a 'rule of reason' under the first *TRAC* factor." *Gonzalez*, 364 F. Supp. at 584–86; *See also Uranga* 2020 WL 5763633, at *11. The Patels do not allege that USCIS is not following its normal rules in processing their applications or any other application.

The Patels have alleged an important interest at stake in the agency adjudication: the ability to legally remain in the country. Their immigration status impacts not just their economic wellbeing, but also their general health and welfare. The Patels allege that their

19

petitions have been pending for about 48 months, which is a significant amount of time, especially given the importance of the interest at stake.

Congress has announced that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). The provision applies to U-status visa petitions. While this preamble is not binding, it is nonetheless at least an "indication of the speed with which [Congress] expects the agency to proceed." *TRAC*, 750 F.2d at 80. "[A]fter all, Congress had the option of saying nothing on the subject at all." *Uranga*, 2020 WL 5763633, at *12.

The Patels allege, however, that it currently takes USCIS about 55 months to make waiting-list decisions. (DE 1, Complaint, ¶ 48.) Thus, the Patels do not allege that USCIS is somehow processing their U-Status applications differently than other applicants or that their applications have been delayed beyond the norm. *Uranga*, 2020 WL 5763633, at *13 ("It is notable that plaintiff does not point to any unique considerations that warrant an expedited review of his U-visa petition; nor does he contend that the agency has treated him unfairly, or differently than any of the other tens of thousands of applicants who have also waited far too long. ")

In determining whether the Patels' claim should move forward to discovery, the Court will also consider the effect of granting the Patels the relief they seek: an order requiring the agency to make waiting-list decisions for all of them within 30 days. (DE 1, Complaint, ¶ 144.) This comports with the fourth factor in the *TRAC* framework under which "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority."

20

USCIS argues that, if this Court orders that the Patels' applications be moved to the front of the line for processing, that will delay the processing of the applications that are currently at the front of the line. The D.C. Circuit has declined to grant relief, even though all the other *TRAC* factors favored the plaintiff, where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Uranga*, 2020 WL 5763633, at *12 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

The Patels seem to argue that moving their applications to the front of the line would not affect the processing of any other application because U-status applications can be processed concurrently. This cannot be. There is currently a backlog of U-status visa applications, enough to cause the 55-month delay in waiting list decisions that the Patels allege in their complaint. Moving any application to the front of any line for processing would necessarily move others in that line back a space. *See Uranga*, 2020 WL 5763633, at *12 (Concluding that, where "[t]here are currently more than 152,000 pending principal U-visa applications, and there are only three service centers that process them," requiring USCIS to immediately adjudicate the plaintiff's U-status waitlist eligibility "would merely move him up the line, and move everyone else back.")

The Patels seek an order that would expedite the processing of their petitions. "[T]hat would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). *See also Alkassab v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017)

("The effect of compelling USCIS to adjudicate Plaintiff's asylum application would be simply to bump him to the front of the queue, thwarting the Government's efforts to prioritize certain groups of applicants (applications filed by children are, for example, currently prioritized.)")

The Patels argue that, if their unreasonable-delay claim must be dismissed simply because an order moving them to the front of the line will delay the processing of other applications, then no plaintiff could ever state a claim for an unreasonably delayed immigration benefit. The Court does not find that the Patels' claim must be dismissed for this reason alone. Instead, the Court has determined that, according to the Patels' allegations, USCIS follows a rule of reason in processing U-status visa applications, which consists of a general rule with exceptions. There is no allegation that USCIS has not followed that rule of reason in processing the Patels' applications. The processing of the Patels' applications has, thus far, not taken longer than the usual wait time for such applications. In these circumstances, the Court agrees with the Fourth Circuit's admonition that USCIS "operates in an environment of limited resources, and how it allocates these resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess." *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004).

The Patels have failed to state a claim that the USCIS has unreasonable delayed an adjudication of their U-status visa petitions. Accordingly, that claim and their claim for attorney's fees under the Equal Access to Justice Act must be dismissed.

**IV.     Conclusion**

For all these reasons, the Court hereby ORDERS that USCIS's motion to dismiss (DE 11) is GRANTED as follows:

1) The Patels' claim that USCIS has unreasonably delayed granting them work authorizations under 8 U.S.C.§ 1184(p)(6) (Count I) is dismissed for lack of subject-matter jurisdiction;

2) The Patels' claim that USCIS has unreasonably delayed adjudication of their petitions for U-status visas (Count II) is DISMISSED for failure to state a claim; and

3) The Patels' claim under the Equal Access to Justice Act is DISMISSED for failure to state a claim.

Dated January 08, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY